# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JANUARY 22, 2009
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2007-SC-000224-MR

DATE 2/12/09 Kelly Klaber D.C.

DANA JACKSON                                                              APPELLANT

|          | ON APPEAL FROM CAMPBELL CIRCUIT COURT |
| V.       | HONORABLE JULIE R. WARD, JUDGE        |
|          | NO. 06-CR-00540                       |

COMMONWEALTH OF KENTUCKY                                    APPELLEE


## MEMORANDUM OPINION OF THE COURT

### REVERSING

In Newport, Kentucky in 2006, police officers had come to know the "Victoria Square" area of the city as a high drug traffic area. As part of an effort to combat drug trafficking in that area, officers utilized an informant, Ashley Lowe, to set up a controlled buy. Lowe had previously been charged with trafficking in a controlled substance and was working with police in exchange for a reduction of his charges.

In September of 2006, Lowe informed police that he could make a drug buy. Lowe went to the police station where he placed a telephone call to Appellant, Dana Jackson. Lowe and Appellant are cousins. The telephone call was recorded. According to Lowe, a drug buy was set up with Appellant.

After the call was made, Lowe met police officers at a Thrift Way store near Victoria Square. After searching Lowe, the officers wired him and gave

him sixty dollars in cash. Lowe then made his way to Victoria Square and waited until a green Ford Explorer arrived. Appellant allegedly got out of the vehicle and completed the transaction. Lowe returned to the Thrift Way and surrendered the substance to police.

The substance was sent to the Kentucky State Police Crime Laboratory in Cold Spring where it was confirmed to be 1.77 grams of crack cocaine. Appellant was then arrested and charged with trafficking in a controlled substance in the first degree. No drugs or money were found on Appellant at the time of his arrest. While in jail, Appellant placed a telephone call to Lowe. During the recorded conversation, he told Lowe, "It's going to be hunting season in Kentucky. Do you feel me?" On the basis of this statement, Appellant was also charged with intimidation of a witness.

At trial, Ashley Lowe was the Commonwealth's main witness. Lowe was asked to listen to the audio tape of the "set-up" telephone call and was able to interpret what was said. He was also asked to listen to the wire tape from the "drug buy," but was unable to make out what was said because the tape was of exceptionally poor quality. Officer Brown then took the stand for the Commonwealth and purported to interpret portions of the "drug buy" tape.

The Commonwealth also prepared a transcript of the jail telephone conversation between Appellant and Lowe. At trial, the jury was provided with copies of the transcript. The transcript was not entered into evidence, and no instruction was requested or given to the jury concerning its limited use. The jury acquitted Appellant of the intimidating a witness charge, but convicted him for trafficking in a controlled substance in the first degree, second or

2

subsequent offense, and for being a persistent felony offender in the second degree. He was sentenced to thirty years imprisonment and appeals to this Court as a matter of right pursuant to Ky. Const. § 110(2)(b).

Appellant claims four grounds of error: (1) that there was insufficient evidence to support a verdict; (2) that he was deprived of due process when the Commonwealth was allowed to have its witnesses interpret the audio tapes; (3) that the court erred by allowing the Commonwealth to provide the jury with the transcript of Appellant's phone conversation with Ashley Lowe (which contained Kentucky Rule of Evidence (KRE) 404(b) evidence); and (4) that the jury instructions lacked specificity regarding the second offense and persistent felony offender penalty enhancements, thus denying him due process of law.

As we will reverse on the second ground, we will address it first. Thereafter, we will briefly discuss the other issue likely to recur on retrial. Springer v. Commonwealth, 998 S.W.2d 439, 445 (Ky. 1999). We will not discuss Appellant's claim that there was insufficient evidence to support a verdict because we find this argument to be without merit. Additionally, we decline to address the issue of the transcript as it was only relevant to the witness intimidation charge and will not be admissible on retrial.

## INTERPRETATION OF THE AUDIO TAPES

Appellant argues that he was deprived of due process of law when a police officer and a police informant were allowed to interpret audio tapes of the "set-up" phone call and the "drug buy" at trial. Appellant argues that it was error for the trial judge to allow the Commonwealth to advance its version of what was said in the audio tapes. Appellant further argues that the

3

Commonwealth cannot "have two bites at the apple," and must either have the witness testify from memory or admit the audio tapes in their entirety while the witness is on the stand. Although this issue was not preserved for review, Appellant requests palpable error review under RCr 10.26.

To prevail on an unpreserved claim of error under the palpable error rule, Appellant must show that the error resulted in manifest injustice. Martin v. Commonwealth, 207 S.W.3d 1, 3 (Ky. 2006). Appellant must show "the probability of a different result or error so fundamental as to threaten his entitlement to due process of law." Brooks v. Commonwealth, 217 S.W.3d 219, 225 (Ky. 2007). On appellate review, the focus is on "whether the defect is so manifest, fundamental, and unambiguous that it threatens the integrity of the judicial process." Martin, 207 S.W.3d at 5.

In the present case, the Commonwealth used two witnesses to relate to the jury what was being said in the audio tapes. Under KRE 602, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Lowe was present at the time of both communications and had first-hand knowledge of what was said; therefore, "[a]s with any participant in a conversation, the informant witness was entitled to testify as to his recollection of what was said." Gordon v. Commonwealth, 916 S.W.2d 176, 180 (Ky. 1995). However, Lowe did not merely testify from his recollection. He also interpreted the recordings. In Gordon v. Commonwealth, we visited this very issue. Id. The police informant took the stand in that case and gave his recollection of the drug transaction between himself and the appellant. Id. Thereafter, a portion

4

of an audio tape of the transaction was played for the witness. Id. The prosecutor asked if the witness could hear the tape and what was said. Id. The witness then recounted what was said in that portion of the tape. Id. In Gordon, we found this to be error and directed that "upon retrial, the court should refrain from permitting a witness to interpret what is on [an audio tape]." Id. However, in Gordon the error was properly preserved. Id. Here, we must review for palpable error.

Although it was error for the trial court to allow Lowe to interpret the audio tapes (rather than have the jury interpret the tapes), we cannot say that this alone rises to the level of manifest injustice. To begin, Lowe testified to the events surrounding the drug sale. He was also available for cross-examination concerning any discrepancies in the tapes. Further, Appellant fails to point to any specific parts of the tapes he would have interpreted differently.

The testimony of Officer Brown, however, is more problematic. Brown's testimony was in error because (1) he was allowed to interpret the drug buy tape for the jury; (2) he did not have "personal knowledge of the matter"; and (3) it was hearsay. Id.; KRE 602; KRE 802. The first error in allowing Officer Brown's testimony is that, like Lowe, Brown should not have been allowed to interpret inaudible portions of the drug buy tape for the jury. Sanborn v. Commonwealth, 754 S.W.2d 543, 540 (Ky. 1998); Gordon, 916 S.W.2d at 180. The second error is that there was a preemptory bar to the admissibility of Officer Brown's testimony under KRE 602 because he had no personal knowledge of the matter. Finally, Officer Brown's testimony was hearsay because he was repeating out-of-court statements being offered for the truth of

5

the matter to be asserted. KRE 801; KRE 802. The evidence against Appellant in this case hinges almost entirely upon the testimony and credibility of Lowe. There was little other evidence to support a conviction – except the impermissible interpretation of the drug buy tape by Officer Brown. This made the improper testimony of Officer Brown highly pivotal to the Commonwealth's case. We find that the errors present in Officer Brown's testimony result in a manifest injustice and rise to the level of palpable error. Accordingly, we reverse on this ground.

## JURY INSTRUCTIONS IN THE PENALTY PHASE

Appellant also argues that the jury instructions in the penalty phase lacked specificity and denied him a unanimous jury verdict and due process of law. This issue was not preserved for review. However, Appellant has requested palpable error review. RCr 10.26.

Appellant's sentence was enhanced under the "second or subsequent offense" provisions of KRS Chapter 218A, as well as under the persistent felony offender sentencing statute, KRS 532.080. We have previously held that an offender's sentence may be enhanced under both provisions where separate prior qualifying convictions are used to support each enhancement. Morrow v. Commonwealth, 77 S.W.3d 558, 560 (Ky. 2002). Appellant was convicted of three felonies for trafficking in a controlled substance in 2003. The jury instructions in the penalty phase did not distinguish between the three counts in his 2003 indictment. While we have been careful to note that constitutional and statutory protections against double jeopardy would prevent the Commonwealth from using the same prior conviction for both enhancements,

6

there is no indication in the present case that jurors relied upon the same prior conviction for both enhancements. Id. at 562. Rather, there were three previous convictions jurors could have chosen from. Thus, any error present was harmless. Accordingly, we find no error on this ground.

## CONCLUSION

For the reasons set forth herein, Appellant's conviction for trafficking in a controlled substance in the first degree is reversed, and the case is remanded to the Campbell Circuit Court for a new trial consistent with this opinion.

Minton, C.J.; Abramson, Noble, Schroder, Scott, and Venters, JJ., concur. Cunningham, J., also concurs, but states that it is his sentiment that Gordon needs re-visiting as being too restrictive on the testimony of an actual participant in transcribed communications. Here, however, the error is much more pronounced because Officer Brown was a third party who was not even present during the recorded drug buy and was only interpreting the audio tape.

7

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Perry Thomas Ryan
Assistant Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601-8204